```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF HAWAII

WATOSHINA LYNN COMPTON,         )    CIV. NO. 11-00198 SOM-BMK
                                )
          Plaintiff,            )
                                )    ORDER DISMISSING COMPLAINT
     vs.                        )
                                )
COUNTRYWIDE FINANCIAL           )
CORPORATION,                    )
COUNTRYWIDE HOME LOANS, INC.,   )
BANK OF AMERICA CORPORATION,    )
BAC HOME LOANS SERVICING, LP,   )
U.S. BANK NATIONAL              )
ASSOCIATION AS TRUSTEE,         )
MORTGAGE ELECTRONIC             )
REGISTRATION SYSTEMS,           )
U.S. BANK NATIONAL              )
ASSOCIATION,                    )
JOHN AND MARY DOES 1-10,        )
                                )
          Defendants.           )
_____)
```

                    ORDER DISMISSING COMPLAINT

I.    INTRODUCTION AND FACTUAL BACKGROUND.

    On March 28, 2011, Plaintiff Watoshina Lynn Compton filed her Complaint in this matter.  Compton alleges that Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc. ("Countrywide"), Bank of America Corporation ("BOA"), BAC Home Loans Servicing, LP ("BAC"), U.S. Bank National Association as trustee, Mortgage Electronic Registration Systems ("MERS"), and U.S. Bank National Association ("U.S. Bank") violated federal and state statutes during the servicing and modification of a residential mortgage loan.

Defendants' motion to dismiss is granted without a hearing pursuant to Local Rule 7.2(d). The Complaint does not state a claim against Defendants, and it is dismissed.

II.     BACKGROUND.

On May 18, 2006, Compton executed a mortgage and note in favor of Countrywide for $920,000. See Compl. ¶ 59, ECF No. 1. On May 1, 2009, Compton stopped making payments on the loan after her business revenues fell. See id. ¶ 62. Compton allegedly spoke with BAC on numerous occasions about obtaining a loan modification. See id. ¶¶ 63-91. On August 29, 2009, Compton allegedly received a modification approval notice from BAC that explained that Compton "needed to sign and return the enclosed documents" to accept the modification. Compl. ¶ 70. Between September 2009 to October 2009, BAC allegedly failed to modify Compton's loan on three occasions, citing deficiencies in the notary acknowledgment in Compton's submissions. Id. ¶¶ 71-74. Compton alleges that, between November 2009 and February 2011, BAC systematically and routinely frustrated her attempts to modify her loan. Id. ¶¶ 78-91. She alleges, among other things, that BAC made false statements to her about the status of her modification, closed her file without justification, required her to resubmit documents numerous times, and counseled her to remain delinquent on mortgage payments. See id. ¶¶ 190-194.

On August 5, 2010, MERS, acting as nominee for Countrywide, recorded an assignment of mortgage to U.S. Bank. See id. ¶ 92. On August 23, 2010, U.S. Bank recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. See id. ¶ 93.

On March 28, 2011, Compton filed a Complaint asserting the following five claims: (1) declaratory relief; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unfair and deceptive acts and practices; and (5) injunctive relief. See Compl. ¶¶ 95-216. Compton also seeks punitive and treble damages, along with attorney's fees and costs. See Compl. at p. 86.

Compton's counsel has brought these very claims on behalf of other clients in other actions, and had those claims dismissed. See, e.g., Phillips v. Bank of America, N.A., Civ. No. 10-00551 JMS-KSC, 2011 WL 2160583 (D. Haw. June 1, 2011); Velasco v. Security Nat. Mortg. Co., Civ. No. 10-00239 DAE-KSC, 2011 WL 2117008 (D. Haw. May 24, 2011); Radford v. Wells Fargo Bank, N.A., Civ. No. 10-00767 SOM-KSC, 2011 WL 1833020 (D. Haw. May 13, 2011). This court has warned counsel to prepare his Complaints more carefully. See Goya v. Wells Fargo Bank, N.A., Civ. No. 11-00048 SOM/KSC, 2011 WL 2559830 (D. Haw. June 27, 2011) (warning counsel not to keep filing rejected boilerplate complaints).

Compton's counsel appears to disagree with Defendants' assertion that Compton's Complaint is "nearly identical to the other lawsuits by her lawyer." Mot. at 1. Compton's counsel characterizes this statement as "simply demonstrat[ing] the systemic and ongoing nature of Defendants' unfair and deceptive business practices." However, Compton's Complaint is indeed very similar to other complaints filed by this lawyer. See, e.g., Norris v. Countrywide Financial Corp., Civ. No. 11-00156 LEK-KSC. What is systematic and ongoing is counsel's refusal to heed the court's multiple warnings. See Duarte v. Bank of America, Civil No. 10-00372 JMS-BMK, 2011 WL 1399127 (D. Haw. Apr. 12, 2011); Caraang v. PNC Mortg., Civ. No. 10-00594 LEK-BMK, 2011 WL 1326959 (D. Haw. Apr. 5, 2011).

III.    ANALYSIS.

Defendants seek dismissal of the Complaint, arguing that it fails to sufficiently allege a claim. To survive this challenge, Plaintiff's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the Complaint are true, even if doubtful in fact. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

### A. Counts I and V (Declaratory and Injunctive Relief).

Defendants contend that Count I (Declaratory Relief) and Count V (Injunctive Relief) fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action. Mot. at 6-9, 24-25, ECF No. 12. The court agrees that these counts fail to state claims.

Count I seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[1] See Compl. ¶ 95. Count I alleges that

---

[1] The Declaratory Judgment Act provides in pertinent part:

a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or

5

"[a]n actual controversy exists with respect to whether or not U.S. Bank has the legal authority to foreclose on the Subject Property." Compl. ¶ 96. Compton "requests declaratory judgment to determine that U.S. Bank, in fact, does not have the legal authority to foreclose on the Subject Property." Id. Compton bases her claim for declaratory relief on allegations that MERS could not have validly assigned the mortgage to U.S. Bank, Countrywide did not effectively transfer Compton's note, and U.S. Bank does not hold title to the mortgage. Id.

As pled, Compton's declaratory relief claim is not cognizable as an independent cause of action. See Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so."); Hoilien v. Bank of America, Civ. No. 10-00712 JMS/BMK, 2011 WL 976699, at *4 (D. Haw. Mar. 17, 2011) ("Plaintiff's declaratory relief claim is not cognizable as an independent cause of action under the Declaratory Relief Act"). That is, because Compton's claim is based on allegations

---

decree and shall be reviewable as such.
28 U.S.C. § 2201(a).

6

regarding Defendants' past wrongs, a claim under the Declaratory Judgment Act is improper and essentially duplicates the other causes of action. See, e.g., Ballard v. Chase Bank USA, N.A., 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'" (alteration in original)); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

Count V seeks injunctive relief for the "irreparable harm" that will occur from foreclosure. See Compl. ¶ 214. The court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. See, e.g., Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request

for injunctive relief by itself does not state a cause of action" (quotation marks and citation omitted)); Plan Pros, Inc. v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if Compton is entitled to such a remedy on an independent cause of action.

Compton's position on Counts I and V poses several problems. The heading for Count V states that the injunctive relief claim is brought only against "Defendants BNY Mellon," a party not named in this present lawsuit. See Compl. at p. 84. Moreover, Compton's counsel fails entirely to address Counts I and V in the Opposition. Even ignoring these particular issues, the court DISMISSES Counts I and V without leave to amend. If Compton eventually prevails on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because Compton prevails (or has met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action.

B. Count II (Breach of Contract)

In Count II, Compton appears to assert a breach of contract claim against BAC, although the title to Count II refers

only to Bank of America.  See Compl. at p. 54.  Compton alleges that, "but for Defendant BAC Home Loans Servicing's breach of the Loan Modification Agreement, Plaintiff would not have ended up in foreclosure."  Compl. ¶ 152.

The Loan Modification Approval Notice stated that "[i]n order for the modification to be valid, the enclosed documents need to be signed and returned."  See Compl., Ex. 6.  The notice "[m]ust be signed in the presence of a Notary.  The notary acknowledgment must be in recordable form."  Id.  BAC allegedly did not deem the Loan Modification Agreement to be in effect because "the notary had not signed the documents correctly." Compl. ¶ 71.  Compton complains that BAC never elaborated on how the notary acknowledgment was deficient.  Compton says that, at most, "the ink from the notary stamp is slightly smudged."  Id. ¶ 143.  The court notes that a copy of the Loan Modification Agreement is attached to Compton's Ex Parte Motion for Temporary Restraining Order, filed on April 4, 2011.  See ECF No. 5-3.  The original may be clearer, but the copy does not provide a viewer with any way to confirm who the notary public was, much less whether he or she had notarization authority.

Even if the Loan Modification Agreement constituted a valid contract, which is not a matter the court decides here, Compton does not sufficiently plead a claim for its breach because she appears to concede that she herself failed to perform under its terms.  A breach of contract claim should allege (1)

9

the contract at issue; (2) the parties to the contract; (3) the claimant's performance under the contract; (4) the particular provision of the contract allegedly violated by the defendant; (5) when and how the defendant allegedly breached the contract; or (6) how the plaintiff was injured. See Sarmiento v. Bank of New York Mellon, Civ. No. 10-00349 JMS/BMK, 2011 WL 884457, at *6 (D. Haw. Mar. 10, 2011); Honold v. Deutsche Bank Nat'l Trust Co., Civ. No. 10-00625 JMS/BMK, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010). See also Otani v. State Farm Fire & Cas. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient.").

Compton admits that pursuant, to the Loan Modification Agreement, she "promised to make monthly payments of principal and interest of $4,894.43 beginning on November 1, 2009." Compl. ¶ 129. The Loan Modification Agreement stated that "[n]othing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and [the Mortgage]." Compl., Ex. 5 at ¶ 4. Compton does not allege that she ever made a single payment following her purported execution of the loan modification agreement. Indeed, she alleges, without any dispute as to accuracy, that BAC told her in August 2010 that "she had a negative balance of $4000." Compl. ¶ 88. See Otani, 927 F. Supp. at 1337 ("it is well-established that a party cannot

recover for a breach of contract where she fails to comply with the contract herself.") (citation omitted). Not alleging her own performance under an alleged contract, Compton's Complaint instead suggests her own nonperformance. Count II is therefore DISMISSED, although Compton may seek to amend this claim.

In the Opposition, Compton asks the court to consider the anticipatory breach doctrine for her breach of contract claim. See Opp'n at 8, ECF No. 21. Even overlooking the absence of any mention of this doctrine in the original Complaint, it is inapplicable to monetary installment contracts. See John Hancock Mut. Life Ins. Co. v. Cohen, 254 F.2d 417, 427 (9th Cir. 1958) ("unconditional unilateral contracts for the payment of money in installments are not the proper subjects for the doctrine of anticipatory breach.").

  C. Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing)

Count III asserts a "Breach of the Implied Covenant of Good Faith and Fair Dealing." Compton alleges that Defendants willfully breached their implied covenant of good faith and fair dealing by engaging in the acts alleged in the Complaint, including "attempt[ing] to revoke a validly formed contract," Compl. ¶ 165, "not allow[ing] Plaintiff the opportunity to remedy the alleged omission or inaccuracy of the Notary signature," id. ¶ 166, and "never [allowing Plaintiff] to speak to the same BAC Home Loans Servicing agent," id. ¶ 169. Compton seeks punitive

damages based on these allegedly "misleading and deceptive practices." See id. ¶ 164.

This claim in essence asserts the tort of "bad faith." See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort when a plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based on a mortgage loan contract. See also Rey v. Countrywide Home Loans, Inc., Civ. No. 11-0142 JMS/KSC, 2011 WL 2160679, at *12 (D. Haw. June 1, 2011).

Moreover, although commercial contracts for the sale of goods also require good faith in their performance and enforcement, this obligation does not create an independent cause of action. See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). Compton thus does not properly plead an independent claim of bad faith.

Importantly, even assuming a bad faith tort exists outside the insurance context, "[a] party cannot breach the

12

covenant of good faith and fair dealing before a contract is formed." Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the covenant of good faith does not extend to activities occurring before consummation of an insurance contract). Defendants cannot be liable for breaching a contract covenant when no contract existed.

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend.

> D. Count IV (Violation of Unfair and Deceptive Acts and Practices and of State and Federal Antitrust Laws).

Count IV alleges that all Defendants are liable for unfair and deceptive acts and practices because, among other things, they allegedly made material representations and "purposefully delayed Plaintiff's modification efforts," Compl. ¶ 191. Count IV is brought under section 480-2(a) of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

13

Compton does not state a claim under section 480-2 of the Hawaii Revised Statutes because lenders generally owe no duty to a borrower "not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay." Marzan v. Bank of Am., Civ. No. 10-00581 JMS/BMK, 2011 WL 915574, at *9 (D. Haw. Mar. 10, 2011) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan")).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money."

14

The unfair and deceptive acts claim in Count IV fails on that basis.

In Count IV, Compton also asserts violations of state and federal antitrust laws. Specifically, Compton appears to allege a violation of § 2 of the Sherman Act, 15 U.S.C. § 2. See Compl. ¶ 197.

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. Monopolization and attempted monopolization are the two traditional claims asserted under § 2. To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acquisition, or historic accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)); Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540-41 (9th Cir. 1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004) (listing the elements of a monopolization claim).

In enacting the federal antitrust laws, Congress allowed private parties to bring suit under section 4 of the Clayton Act, 15 U.S.C. § 15. Pool Water Prods. v. Olin Corp., 258 F.3d 1024, 1034 (9th Cir. 2001). However, "[i]n addition to the traditional limitations upon standing imposed by the Constitution, Congress imposed additional limitations upon those who can recover damages under the antitrust laws." Id. "These limitations are sometimes referred to as the antitrust standing requirements." Id.

The factors relevant to antitrust standing are summarized as follows: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 987 (9th Cir. 2000) (quoting Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal., 190 F.3d 1051, 1054-55 (9th Cir. 1999)). "The most important limitation is that the private party must prove the existence of '*antitrust* injury.'" Pool Water Prods., 258 F.3d at 1034 (citations and internal quotations omitted) (emphasis in original).

> To show antitrust injury, a plaintiff must prove that his loss flows from an *anticompetitive* aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for

16

> losses stemming from acts that do not hurt competition. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*.

Id. (quoting Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433) (9th Cir. 1995) (emphasis in original)). Another requirement is that "the injured party be a participant in the same market as the alleged malefactors," i.e., "the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1008 (9th Cir. 2003) (citation and quotation marks omitted).

As Compton has failed to adequately allege causal antitrust injury, her claim under the Sherman Act fails. The crux of Compton's argument is that Countrywide and Bank of America, as well as "several other large private banking institutions within the United States," agreed to establish a scheme "by which they would, and in fact did, set up a private system of recording interests." Compl. ¶ 199. Subsequently, these banks "used their combined market power in the financial industry to take control of the market for private securitization of mortgages." Id. ¶ 200. Defendants "used their control over the residential mortgage market by inflating the market for residential properties in the United States and thereby

17

increasing the proportionally-based fees that such larger loans would generate." Id. ¶ 203.

The Complaint is devoid of specific factual allegations relating to this claim. Compton has not alleged any facts establishing "specific intent to control prices or destroy competition." Rebel Oil, 51 F.3d at 1433. She does not describe "predatory or anticompetitive conduct directed at accomplishing that purpose." Id. No allegations suggest "a dangerous probability of achieving 'monopoly power.'" Id. Nor does she sufficiently allege "antitrust injury." Id. There are no factual allegations that, if proven, would indicate that the conduct of Countrywide and Bank of America and the securitization process affected competition, which is "the critical question for determining whether there is antitrust injury." Pool Water Prods., 258 F.3d at 1036.

Compton also appears to allege a violation of the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9. See Compl. ¶ 197. This law provides that "[n]o person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize any part of the trade or commerce in any commodity in any section of the State." Haw. Rev. Stat. § 480-9. As with federal law, plaintiffs in antitrust proceedings brought under Hawaii law must plead the "nature of the competition" to "ensure that the injury results from a

competition-reducing aspect of the defendant's behavior." <u>Davis v. Four Seasons Hotel Ltd.</u>, 122 Haw. 423, 445, 228 P.3d 303, 325 (2010) (citing and relying on federal law). Thus, Compton's failure to sufficiently allege any anticompetitive conduct as discussed with respect to federal state law is applicable to the state antitrust analysis as well. Accordingly, the federal and state antimonopoly claims in Count IV are DISMISSED.

V.    <u>CONCLUSION.</u>

For the foregoing reasons, the court dismisses the Complaint. Plaintiff is given leave to submit a motion to Magistrate Judge Barry M. Kurren that seeks permission to file an Amended Complaint. The proposed Amended Complaint must be attached to the motion and may not reassert the claims set forth in what are now Counts I, III, or V. Any such motion shall be filed no later than August 15, 2011. If Plaintiff fails to timely file a motion seeking leave to file an attached Amended Complaint, judgment will be automatically entered in favor of Defendants. The court cautions Plaintiff's counsel to ensure that any new pleading does not repeat the deficiencies already called to his attention in this and other cases.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 13, 2011.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Compton v. Countrywide Financial Corporation, et al., Civil No. 11-00198 SOM/BMK; ORDER DISMISSING COMPLAINT.