IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WATOSHINA LYNN COMPTON, | CIVIL NO. 11-00198 DKW-BMK |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA CORPORATION; BAC HOME LOANS SERVICING, L.P.; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-7; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; U.S. BANK NATIONAL ASSOCIATION; JOHN AND MARY DOES 1-10, | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

At issue in this case is whether Defendants' conduct during Plaintiff

Watoshna[1] Compton's loan modification application process constituted unfair or

---

[1] Compton's first name is incorrectly spelled as "Watoshina" in the caption.  Declaration of Watoshna Compton ("Compton Decl.") ¶ 1.

deceptive acts or practices under Hawai'i law.  Before the Court is Defendants'

Motion For Summary Judgment, Or In The Alternative, Partial Summary

Judgment ("Motion For Summary Judgment").  Dkt. No. 71.  Because Compton's

allegations in support of the only remaining claim for Unfair and Deceptive Acts

and Practices ("UDAP") either have no legal merit or lack evidentiary support

sufficient to create a genuine issue of material fact for trial, the Motion For

Summary Judgment is GRANTED.

## BACKGROUND

## I.    Factual Background

For purposes of this summary judgment motion, the Court views the

evidence in the light most favorable to Compton.  *See, e.g.*, *Sullivan v. Oracle*

*Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011).  Viewed in that light, the evidence

demonstrates the following:

In 2003, Compton purchased real property located in Kihei, Hawai'i through

a privately funded construction loan.  Compton Decl. ¶ 2.  In May 2006, Compton

refinanced, executing a $920,000 promissory note ("Note") secured by a mortgage

("Mortgage") on the subject property.  Dkt. No. 73-4, Defendants' (Def.) Exhibit

("Exh.") A; Dkt. No. 73-5, Def. Exh. B.  The Mortgage identifies Compton as the

Borrower, Countrywide Home Loans, Inc. ("CHL") as the lender, and Mortgage

Electronic Registration Systems, Inc. ("MERS") as "mortgagee."  Dkt. No. 76-3,

2

Plaintiff's (Plf.) Exh. 1.  The Note secures:  "(i) repayment of the Loan, and all renewals, extensions, and modification of the Note; and (ii) the performance of [Plaintiff's] covenants and agreements under [the Mortgage] and Note."  *Id.* at 3.  Bank of America Corporation and/or Bank of America, N.A. ("BANA")[2] subsequently acquired CHL.  FAC ¶ 7.

In approximately August 2008, Compton's fiberglass pool business suffered a significant downturn.  Compton Decl. ¶ 5.  She contacted BANA to inquire about a loan modification.  *Id.* ¶ 6.  According to Compton, on October 10, 2008, she spoke with "Sean" from BANA about the loan modification process, and "Sean" advised her that she would have to be at least 30 days behind on her mortgage payments in order to qualify for loan modification.  *Id.* ¶¶ 9-10.  Compton continued to make timely payments on her mortgage between October 2008 and May 2009.  *Id.* ¶ 11.

In May 2009, Compton defaulted on her loan and contacted BANA to seek a loan modification.  Dkt. No. 73-6, Def. Exh. C; Declaration of Julia Susick ("Susick Decl.") ¶ 8; Compton Decl. ¶ 13.  On May 15, 2009, BANA received financial documents from Compton, and a letter requesting assistance with a loan

---

[2]BANA is the successor by merger to BAC Home Loans Servicing, LP.  *See* Dkt. No. 71-1 at 7 n.1.  Accordingly, the Court hereinafter uses "BANA" to refer to "BAC Home Loans Servicing, LP."

modification.  Susick Decl. ¶ 9.  BANA advised Compton that reviews generally take 30 to 60 days.  *Id.*

Although Compton's first loan modification application was declined, BANA advised that she could re-apply, and she did so on July 17, 2009.  *Id.* ¶¶ 13-14.  On July 28 and 29, 2009, BANA notified Compton that she needed to submit certain financial documents to complete her loan modification packet.  *Id.* ¶ 15. BANA claims that it received some, but not all, of the requested financial documents, which Compton disputes.  *Id.* ¶ 16.  As such, on August 10, 2009, BANA advised Compton that her application was canceled because it was incomplete.  *Id.* ¶ 17.

On August 11, 2009, Compton sent BANA additional financial documents in order to continue with the loan modification review.  *Id.* ¶ 18.  By letter dated August 29, 2009, BANA notified Compton that her loan modification had been approved ("Loan Modification Approval Notice" or "Notice").  Dkt. No. 73-9, Def. Exh. F.  The Notice stated:  "We are pleased to advise you that your loan modification has been approved.  In order for the modification to be valid, the enclosed documents need to be signed and returned."  Dkt. No. 73-9, Def. Exh. F. at 1.  The Notice explained that the Loan Modification Agreement was enclosed and explicitly stated the Loan Modification Agreement "[m]ust be signed in the presence of a Notary.  The notary acknowledgment must be in recordable form."

*Id.* at 2.  Another enclosed document that needed to be signed and returned was a Step Rate Loan Modification addendum.  *Id.* at 5.  The Loan Modification Approval Notice warned:  "In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than September 28, 2009, we will continue our collections actions without giving you additional notices or response periods."  *Id.* at 2.

On September 18, 2009, Compton signed the Loan Modification Agreement and sent it to BANA.  Dkt. No. 73-10, Def. Exh. G.  BANA, however, did not accept the executed Loan Modification Agreement because the notarization was smudged and illegible.  Susick Decl. ¶ 23; s*ee* Dkt. No. 73-10, Def. Exh. F at 4.  Specifically, by letter dated September 22, 2009, BANA explained that it was unable to process the modification of Compton's Note because of "[i]ncorrect or [i]ncomplete [n]otary [s]ignatures."  Dkt. No. 73-11, Def. Exh. H.

In an attempt to fix the illegible notary stamp, Compton executed another Loan Modification Agreement on September 28, 2009 and forwarded it to BANA.  Dkt. No. 73-12, Def. Exh. I.  Compton, however, failed to attach the Step Rate Loan Modification addendum to the Loan Modification Agreement, and the notary stamp was, yet again, smudged.  *See id.*; Dkt. No. 73-13, Def. Exh. J.

By letter dated September 29, 2009, BANA advised Compton that the September 28, 2009 signed loan modification could not be accepted.  Dkt. No. 73-

13, Def. Exh. J.  Shortly thereafter, on October 1, 2009, Compton contacted BANA and was told that her workout documents had expired, and thus, she needed to re-apply if she wished to pursue a loan modification.  Susick Decl. ¶ 26.  The following day, Compton resubmitted loan modification paperwork to initiate another loan modification review.  *Id.* ¶ 27.

From December 1, 2009 through February 21, 2010, BANA advised Compton several times that she was still in review for loan modification options. *Id.* ¶ 28.  On March 8, 2010, however, BANA rejected Compton's loan modification application because "[Compton's] financial information proved that her surplus income was greater than 77%, and that at this amount her loan did not qualify for a loan modification per the investor's delegation."  *Id.* ¶ 29.

On August 5, 2010, MERS executed an Assignment of Mortgage, assigning all "right, title, and interest in [the Mortgage] to U.S. Bank."  Susick Decl. ¶ 6; Dkt. No. 73-7, Def. Exh. D.

On August 18, 2010, Compton faxed to BANA updated workout documents to initiate another loan modification.  Susick Decl. ¶ 30.  On August 19, 2010, BANA reviewed Compton's faxed documents and determined that additional information was needed.  *Id.* ¶ 31.  Compton did not return the additional information requested by BANA.  *Id.*

On August 26, 2010, Compton learned that a Notice of Mortgagee's Intention to Foreclose Under Power of Sale had been issued and recorded with the Hawai'i Bureau of Conveyances on August 23, 2010 by U.S. Bank.  Compton Decl. 42 ¶; *see* Dkt. No. 73-8, Def. Exh. E.  After contacting BANA on August 27, 2010, Compton was informed that her file was closed on August 19, 2010 for lack of documentation.  Compton Decl. ¶ 43.

On January 25, 2011, Compton attempted to initiate another loan modification, but was told that she was no longer eligible because U.S. Bank had proceeded with foreclosure.  Compton Decl. ¶ 45.  On March 28, 2011, Compton initiated a suit against BANA.  Susick Decl. ¶ 32.  Compton's workout review was subsequently changed to active on January 4, 2012, and on the following day, BANA received additional workout documents from Compton.  *Id*. ¶¶ 32-33. On May 21, 2012, BANA closed Compton's file because, "based on the financial documents BANA received, [Compton] was unable to support a modified payment."  *Id*. ¶ 37.

The subject property has not yet been foreclosed.  *Id*. ¶ 38.  While Compton remains in possession, she does not currently reside in the subject property. Compton Decl. ¶ 46.

## II.  **Procedural Background**

On March 28, 2011, Compton filed a Complaint asserting various claims against Defendants, including one for unfair and deceptive acts and practices under Hawai'i law ("UDAP claim").  Dkt. No. 1.  Defendants moved to dismiss Compton's Complaint for failure to state a claim [Dkt. No. 12], which the Court granted as to all claims.  Dkt. No. 24.  After final judgment was entered, Compton appealed to the United States Court of Appeals for the Ninth Circuit, seeking reversal of the judgment on her UDAP claim only.  Dkt. No. 27; *see Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1052 (9th Cir. 2014).

On August 4, 2014, the Ninth Circuit issued its Opinion reversing and remanding this Court's dismissal of Compton's UDAP claim.  *Compton*, 761 F.3d at 1057.  The Ninth Circuit held that borrowers are not obligated to show that the lender owed a common law duty of care to state a claim under Sections 480-2 or 480-13 of the HRS.  *Id.* at 1055.  Rather, the Ninth Circuit explained, district courts "need only address whether the complaint adequately alleges that the lender used unfair or deceptive acts in its relationship with the borrower, without looking to negligence law to determine whether the lender breached a common law duty of care."  *Id.* at 1055-56.

Following remand, Compton filed an Amended Complaint, asserting a single UDAP claim premised on the allegations that BANA engaged in unfair and

8

deceptive acts and practices with respect to Compton's attempts at loan modification.  Dkt. No. 55.  Defendants moved for summary judgment [Dkt. No. 71], which Compton opposed.  Dkt. No. 75.  The Court heard oral argument on Defendants' Motion For Summary Judgment on December 18, 2015.  Dkt. No. 80.

## STANDARD OF REVIEW

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must set forth "'significant probative evidence'" in support of

9

its position.  *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

## **DISCUSSION**

### I.    **Hawaii's UDAP Requirements**

Under HRS § 480-2(a), "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  HRS § 480-2(a).   "[A] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Balthazar v. Verizon Haw., Inc.*, 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005) (alteration in original) (quoting *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 228, 11 P.3d 1, 16 (2000)).  An act or practice is deceptive when it is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.  *See Courtbat v. Dahana Ranch. Inc.*, 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006).   "[T]hree elements [are] essential to recovery under

10

HRS § 480-13 and include:  (1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages."  *See Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 435, 228 P.3d 303, 315 (2010) (citations omitted).

Defendants contend that BANA's conduct was neither unfair nor deceptive as a matter of law.  As explained further below, the Court agrees that Compton has failed to produce evidence or provide a meritorious legal argument in support of her UDAP claim, entitling Defendants to summary judgment.

## II.    UDAP Claim Against MERS

The Court first addresses Defendants argument that MERS is entitled to summary judgment because it had no role in Compton's attempts to modify her loan.  Dkt. No. 71-1 at 22.  A review of the allegations in the FAC, together with the absence of any evidence offered in summary judgment by any of the parties with regard to MERS' conduct, supports Defendants' contention.  Indeed, Compton does not dispute that MERS was not involved in soliciting or processing her loan modification application, nor was MERS involved in any loan modification discussions or negotiations.  *See* Dkt. No. 76 at 9.  Accordingly, MERS is entitled to judgment as a matter of law.

11

III.     **UDAP Claim Against Remaining Defendants**

The Court next addresses the specific actions that comprise Compton's

UDAP claim against the remaining Defendants.  Count I alleges that Defendants

violated Chapter 480 by (1) wrongfully denying her loan modification because the

notary had not signed the modification contract correctly; (2) misrepresenting that

Compton had to be at least 30 days behind on her mortgage payments before she

would be considered for a loan modification; (3) purposefully delaying Compton's

loan modification by closing her file; (4) misrepresenting the length of time it

would take to process Compton's loan modification application; and (5)

misrepresenting that foreclosure proceedings would not be brought against her

while her application was being processed.  The Court addresses each in turn.

A.     **BANA Was Within Its Rights to Reject Compton's Loan Modification Agreement**

Compton alleges that "Defendants' revocation of the Loan Modification

Agreement in September 2009, was unfair and deceptive and [Compton]

experienced a series of misleading and deceptive practices in her attempts to

remedy the alleged inaccuracy in the notarization of the Loan Modification

Agreement."  FAC ¶ 71.  In response, "BANA denies that there was a valid loan

modification agreement because the notary had not signed the documents correctly,

and because Compton did not send in a completed loan modification agreement."

Dkt. No. 71-1 at 22.  The Court agrees with Defendants.

It is undisputed that BANA's Loan Modification Approval Notice that accompanied the Loan Modification Agreement explicitly stated, "[i]n order for the modification to be valid, enclosed documents need to be signed and returned[,]" and the loan modification must be signed "in the presence of a Notary." Dkt. No. 73-9, Def. Exh. F at 1-2. The Loan Modification Approval Notice also explicitly provided, "[t]he notary acknowledgment must be in recordable form." *Id*. at 2. There was nothing deceptive, nor anything less than transparent, about Defendants' notarization requirement that could even begin to be characterized as subterfuge.

Nor was there anything inherently unfair about the notarization requirement itself. As Defendants explained at the hearing, proper notarization was necessary in order for the Loan Modification Agreement to be accepted for recording by the Bureau of Conveyances. Moreover, where, as here, BANA was entering into a contract with a person who was not physically in its presence, it made eminent sense to require notarization to ensure the identity of the contracting party. There was nothing untoward, unfair, or even uncommon about the Bank's requirement.

In terms of execution, although Compton twice signed the Loan Modification Agreement and returned it to BANA on September 18 and 28, 2009, BANA did not accept the executed document on either occasion because, as explained by Defendants, "[BANA] determined the notarization was smudged,

13

illegible, and improper."  Dkt. No. 71-1 at 23.  Indeed, Compton admitted in her

deposition that the notarization was smudged and illegible, and it was she who

selected the same offending notary on both occasions.  *See* Dkt. No. 73-3, Exh. 1 at

91:4-23, 97:24-98:1.

In addition, BANA was within its rights to reject the Loan Modification

Agreement on September 28, 2009 when Compton failed to attach the Step Rate

Loan Modification addendum to the Loan Modification Agreement, as it was one

of the "enclosed documents" that needed to be signed and returned in order for

Compton to properly accept the Loan Modification Agreement.

In sum, neither BANA's notarization requirement, nor processing of

Compton's notarized documents in attempted compliance with its requirement,

constituted unfair or deceptive acts or practices within the meaning of Chapter 480.

### B.     There Is No Evidence That BANA Induced Compton Into Default

Compton alleges that, in October 2008, Defendants misrepresented that she

had to be at least 30 days behind on her mortgage payments before she would be

considered for a loan modification.  FAC ¶ 66; Compton Decl. ¶ 9.  Although the

parties dispute whether BANA provided this information to Compton, the Court

agrees with Defendants that the issue is of no consequence because the record

reflects that BANA did not induce Compton into default.  Compton continued

making payments on her loan for another nine months after allegedly receiving this

14

information from BANA.  Compton Decl. ¶ 11.  Compton admitted in her deposition that her dwindling fiberglass pool distribution business, and resulting lack of money, is what caused her to stop making her monthly payments.  *See* Dkt. No. 73-3, Def. Exh. 1 at 43:21-46:2, 86:3-23; Dkt. No. 76-5, Plf. Exh. 3 at 87:8-10.  Further, courts in this district have rejected UDAP claims on the basis that lenders may have told borrowers that their loan modification application would not be processed unless they defaulted on their mortgage, holding that lenders "are within their rights . . . to prioritize the processing of loan modification applications according to the needs of their borrowers."  *Crilley v. Bank of America, N.A.*, Civil No. 12-00081 LEK-BMK, 2013 WL 1767704, at *7 (D. Haw. Apr. 24, 2013) (quoting *Lindsay v. Bank of America, N.A.*, Civ. No. 12-00277 LEK-BMK, 2012 WL 5198160, at *12 (D. Haw. Oct. 19, 2002)).

### C. There Is No Evidence That BANA Purposefully Delayed Compton's Loan Modification By Closing Her File

Compton alleges that "Defendants systematically and purposefully delayed [Compton's] modification efforts by unfairly closing her file for reasons entirely unrelated to any fault of [Compton] . . . ."  FAC ¶ 67.  The evidence in the record does not support this assertion.  Rather, the evidence shows that Compton's files were closed due to her failure to return documents requested by BANA.

As previously discussed, BANA sent Compton a Loan Modification Approval Notice in August 2009, along with the Loan Modification Agreement,

15

with specific instructions regarding the items that needed to be returned by September 28, 2009 in order to effectuate the Loan Modification Agreement.  Dkt. No. 73-9, Def. Exh. F.  The Notice instructed Compton to sign and obtain proper notarization of the Loan Modification Agreement and to return a Step Rate Loan Modification addendum.  *Id.* at 2.  Compton, however, twice failed to obtain proper notarization, and in her subsequent submission, failed to attach the Step Rate Loan Modification addendum.  Because Compton did not complete these necessary steps by the stated deadline, Compton was required to resubmit an application.  Defendants explained at the hearing what is perhaps obvious: resubmission was necessary in order to ensure that Compton's financial information, the basis of her loan modification request, was current.  In other words, financial materials become dated.  It is therefore not surprising, nor deceptive or unfair, for BANA to have put a 30-day expiration date on its modification offer, with rescission being the consequence if its terms were not met within that time frame.  Indeed, BANA did not forever bar Compton from seeking modification once this occurred – it simply required her to begin the process anew. This series of events does not constitute unfair or deceptive acts or practices.[3]

---

[3]Although Compton's first attempt at modification was discontinued because her file was allegedly left to sit on the lender's desk for "too long," FAC ¶ 67, the Court concludes that the evidence supporting this particular allegation is insufficient to create a genuine issue of material fact for trial, and became moot, in any event, by subsequent processing of her modification application.

**D.** **There Is No Evidence That BANA Misrepresented the Length of Time it Would Take to Process Compton's Loan Modification**

Compton alleges that Defendants misrepresented the amount of time it would take to process Compton's loan modification, claiming that "[t]he manner in which UDAP Defendants delayed the modification process was not only unfair to [Compton], but deceptive."  FAC ¶ 69.  Although BANA advised Compton that the initial review period would take 30 to 60 business days, the evidence does not support that the prolonged review period was due to Defendants attempts to mislead Compton.  Rather, the record reflects that the review period was prolonged in the instant case because BANA requested records, and Compton failed to meet the deadline to produce them.  *See, e.g.*, Susick Decl. ¶¶15-17 ("On August 10, 2009, BANA advised [Compton] that her loan modification was canceled because she had not provided all of the requested documents."); *id.* ¶¶ 23-25 ("On September 29, 2009, BANA sent [Compton] a letter advising her that the September 29, 2009 signed loan modification could not be accepted because of the smudged notary stamp.").  Compton's repeated attempts to obtain a loan modification after being denied based on the insufficient or disqualifying financial information that she provided further prolonged the review period.  *See, e.g.*, Susick Decl. ¶¶ 29-31, 33-35.

In addition, Compton fails to provide any discernible argument explaining how the length of time it took BANA to process her loan modification applications

17

caused her alleged injuries or damages.  *See Davis*, 122 Hawai‘i at 435, 228 P.3d at 315.  As to injury and damages, Compton alleges in her FAC:

> Plaintiff has suffered significant financial loss as a direct result of UDAP Defendants' deceptive conduct and revocation of the Loan Modification Agreement.  Non-inclusive, Plaintiff was damaged in the amount of the aggregate accrued difference between what Plaintiff now owes under the original mortgage and what Plaintiff would have owed under the Loan Modification Agreement; her lost investment opportunities from the forced loan default; all penalties and interest incurred on the loan as a result of UDAP Defendants revocation of the Loan Modification Agreement and other unfair and deceptive acts and practices; all expenses that Plaintiff incurred in relation to the loan modification process and the non-judicial foreclosure action, including but not limited to attorney's fees and transaction costs; and damaged credit score.

FAC ¶ 79.

If any such damages have been incurred, they were caused by Compton's own default, and her initiation of the instant lawsuit.  They also primarily relate to Compton's failure to successfully obtain a Loan Modification Agreement, rather than the length of time the loan modification process took.  Although Compton alleges that "[t]he unwarranted and persistent threat that she may be forced out of her home, despite all of her best efforts to deal reasonably and fairly with [Defendants], caused Plaintiff significant emotional and mental distress[,]" FAC ¶ 87, Compton conceded at deposition that UDAP claims do not provide for the recovery of such emotional distress or personal injury damages.  Dkt. No. 73-3,

18

Def. Exh. 1 at 152:3-153:18; *see also* HRS § 480-13(b)(1); *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Hawaiʻi 309, 319, 47 P.3d 1222, 1232 (2002).

In sum, there is no evidence that BANA intentionally frustrated Compton's efforts to modify her loan or misrepresented the length of time that it would take to modify her loan.  There is also no evidence that the length of time it took to process Compton's paperwork caused the injury or damages of which she complains.

### E.   There is No Evidence that BANA Misrepresented that Foreclosure Proceedings Would Not Be Brought Against Her

Compton alleges that Defendants misrepresented that foreclosure proceedings would not be brought against her while her loan modification request was still under review.  FAC ¶ 70.  Compton testified in her deposition that she was told that the foreclosure sale would not take place while her loan modification review was ongoing.  Dkt. No. 73-3, Def. Exh. 1 at 116:18-25.

In fact, the foreclosure process did not commence until *after* Compton's loan application was closed.  Specifically, Compton was told that on August 19, 2010, her loan application was closed.  Compton Decl. ¶ 43.  Four days later, on August 23, 2010, the Notice of Foreclosure was issued.  Compton Decl. ¶ 42; Dkt. No. 73-8, Def. Exh. E.  Although Compton alleges in her FAC that Defendants "fraudulently and deceptively backdated the date at which [Compton's] file was allegedly closed so that her Notice of Foreclosure is seen to be valid[,]" FAC ¶ 70,

19

Compton has failed to offer any evidence in support of this allegation.[4] Because the record reflects that BANA's loan modification review was over before the foreclosure proceedings were commenced, Compton's reliance on this argument is without merit.[5]

In sum, the Court concludes that each of the allegations advanced by Compton in support of her UDAP claim either has no legal merit or lacks evidentiary support sufficient to create a genuine issue of material fact for trial.[6] Accordingly, Defendants are entitled to judgment as a matter of law with respect to Compton's sole remaining cause of action.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' Motion For Summary Judgment (Dkt. No. 71). The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

---

[4]In addition, BANA's August, 29, 2009 Loan Modification Approval Notice explicitly informed Compton that if she failed to successfully complete the Loan Modification Agreement, BANA would reinstitute its collection efforts against her without further notice. Dkt. No. 73-9, Def. Exh. F at 2 ("In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than September 28, 2009, we will continue our collection actions without giving you additional notices or response periods."). As previously discussed, Compton failed to successfully complete the Loan Modification Agreement. Given BANA's Notice to Compton, BANA did not misrepresent that foreclosure proceedings would not be brought against her.

[5]In addition, the Court notes that foreclosure of the subject property has yet to take place.

[6]Because the Court concludes that Defendants' alleged conduct was not "unfair" or "deceptive," it finds it unnecessary to further discuss the issues of causation or damages.

20

DATED:  January 13, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

Compton v. Countrywide Financial Corporation, et al.; CV 11-00198 DKW-BMK;
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT